# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| KENNETH LENTON, | : | Bankruptcy No. 06-10520DWS |
|     Debtor. | : | |

_____

# OPINION

**BY:  DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Motion of the United States Trustee (the "Trustee") to Dismiss the above-captioned bankruptcy case pursuant to 11 U.S.C. § 707(b) (the "Motion"). At issue is whether Debtor may deduct $836 from his current monthly income to account for payments on two loans from Debtor's 401(k) plan and therefore avoid or, if not avoided, rebut the presumption of abuse under the means test in § 707(b)(2)(A) . For the reasons that follow, I find that Debtor may not use the loan payments to avoid the presumption of abuse, but that he has rebutted the presumption by demonstrating "special circumstances" that allow him to deduct the loan payments.  As a result, the Trustee bears the burden of proving that granting Debtor relief under Chapter 7 would be an abuse under § 707(b)(3), a burden that I find has been met here.  The Motion will therefore be granted.

## UNCONTESTED FACTUAL AND PROCEDURAL BACKGROUND[1]

Debtor is fifty-four years old, divorced, and has no dependents.  He has been an employee of Sunoco, Inc. ("Sunoco") for 18 years and participates in Sunoco's ERISA-qualified 401(k) Plan, the Sunoco, Inc. Capital Accumulation Plan (the "SunCAP Plan").[2]  Participation in the SunCAP Plan is voluntary.[3]  Prior to filing the instant Chapter 7 bankruptcy case, Debtor obtained two 401(k) loans from the SunCAP Plan, one on October 5, 2002 in the amount of $24,000 (the "First Loan") and the second on November 20, 2004 in the amount of $18,500.00 (the "Second Loan" and collectively, the "Loans").[4]  Debtor used the proceeds of the Loans to pay credit card debt.  Debtor is currently repaying the Loans through bi-weekly payroll deductions which approximate $836 on a monthly basis (the "Monthly Loan Payment").[5]

Both the Sunoco Human Resources Director and SunCAP Plan administrator state that the payroll deductions for the Monthly Loan Payment are mandatory until the Loans are

---

[1]  The parties agreed that the  record would consist of stipulated facts and the following jointly-submitted documents: the Debtor's Petition, Schedules, Statement of Financial Affairs, Form B22A, the Sunoco, Inc. Capital Accumulation Plan (the "SunCAP Plan"), the Sunoco, Inc. Capital Accumulation Plan Summary Plan Description (the "SPD"), a letter dated March 22, 2006, from William A. Capresecco to Scott Waterman (the "Capresecco Letter"), a letter dated March 24, 2006, from Vanguard Participant Services to Kenneth C. Lenton (the "Vanguard Letter"), and a letter dated August 23, 2006, from John F. Carroll to Scott Waterman, Esquire (the "Carroll Letter"). Exhibits 1-7.  The record is now closed.

[2]  The SunCAP Plan documents were jointly submitted into evidence as Exhibits 2 and 3.

[3]  SPD at 4, Exhibit 3.

[4]  Vanguard Letter, Exhibit 5.

[5]  A total of $386.13 is deducted from the Debtor's biweekly paychecks for the repayment of the two loans.  This amount, multiplied by 26, then divided by 12, results in an average monthly deduction of approximately $836.

repaid.[6]  If, however, Debtor were terminated, took a leave of absence, or was in any

situation where payroll deductions could not be taken, he would have to affirmatively make

the Monthly Loan Payments or be in default.  A default would treat the balance of the Loans

as a distribution from his retirement account, subject to all tax consequences.[7]  At the current

repayment rate, the First Loan will be paid in full on or about July 30, 2007 and the Second

Loan will be paid in full on August 24, 2009.[8]

Debtor filed his Chapter 7 petition on February 7, 2006.  The only scheduled claims

are unsecured nonpriority claims representing credit card debt of $45,330.[9]  Debtor owns no

real property and his Schedule B indicates his largest personal assert is his SunCAP account,

which is valued at $119,406.[10]  Also included among Debtor's listed personalty are two

vehicles, a 1991 Buick Century with 60,000 miles valued at $1,000 and a 1985 Buick Regal

with 130,000 miles valued at $500.  The parties have stipulated that Debtor will need to

obtain a replacement vehicle  within the next five years.

---

[6]  Capresecco Letter, Exhibit 4; Carroll Letter, Exhibit 6.  See also SunCAP Plan § 14.1, Exhibit 2.

[7]  SPD at 14-15.

[8]  Vanguard Letter, Exhibit 5.

[9]  Schedule I.

[10]  Schedule B.

**DISCUSSION**

Because Debtor filed bankruptcy after October 17, 2005, his case is subject to the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. S 256, 109-8, 119 Stat. 23 (2005) ("BAPCPA"). Since the enactment of BAPCPA, both practitioners and the courts have been trying to interpret many less than clear provisions of the new law, often with little in the nature of legislative history to assist them. This contested matter presents such a challenge for me.

I begin with basic rules of statutory interpretation by which this Court is bound. First and foremost, "[i]t is axiomatic that statutory interpretation begins with the language of the statute itself." Virgin Islands v. Knight, 989 F.2d 619, 633 (3d Cir.1993). "A statutory language analysis must precede any resort to legislative history or case law as 'there is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes.'" In re Paret, 347 B.R. 12, 14-15 (Bankr. D. Del. August 01, 2006) (quoting United States v. Am. Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, (1940)). "It is a cardinal principle of statutory construction that the statute ought, upon the whole to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 449 (2001). See also Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 1149 (1992) ("[C]ourts should disfavor interpretations of statutes that render language superfluous."); United States v. MacEwen, 445 F.3d 237, 243 n.6 (3d. Cir. 2006). Indeed, when statutory construction involves two statutory provisions, it is important to have a construction that carries out Congress' goals by harmonizing both

provisions, if possible.  See, e.g., In re Handel, 253 B.R. 308, 311 (BAP 1st Cir. 2000) (each part or section of a statute should be construed with every other part or section so as to produce a harmonious whole).

A court should look to legislative history only when the statute is ambiguous or when the application of the statute's plain meaning produces a result demonstrably at odds with the intention of the drafters.  In re Edmunds, 350 B.R. 636, 642-43 (Bankr. D.S.C. 2006) (*citing* United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026 (1989)).  To the extent that a court examines legislative history for guidance, "the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.' . . . [The Supreme Court has] eschewed reliance on the passing comments of one Member [of Congress], . . . and casual statements from the floor debates."  Garcia v. United States, 469 U.S. 70, 76, 105 S.Ct. 479, 483 (1984) (internal citations omitted).  With these precepts in mind, I examine the statutory provisions at issue.

## I.  The Presumption of Abuse

As amended by BAPCPA, section 707(b)(1) provides that a Chapter 7 case filed by an individual debtor whose debts are primarily consumer may be dismissed, or with a debtor's consent converted to Chapter 13 or 11, if the Court determines that granting the debtor relief would constitute an abuse of Chapter 7.[11]  BAPCPA also added subsection 707(b)(2),

---

[11]  Prior to BAPCPA, former Bankruptcy Code § 707 provided that the court could dismiss a case if it found that granting relief would constitute "substantial" abuse of the provisions of this chapter.  Moreover, there was a presumption in favor of granting the relief requested by the debtor.
(continued...)

referred to as the "means test." This statutory formula requires the court to presume that

granting bankruptcy relief would be an abuse if:

> the debtor's current monthly income reduced by the amounts determined under
> clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of–
>
> > (I) 25 percent of the debtor's nonpriority unsecured claims in the
> > case, or $6,000, whichever is greater, or
> >
> > (II) $10,000.

11 U.S.C. § 707(b)(2)(A)(I).[12] Debtor filed with his petition Form B22A, "Statement of

Current Monthly Income and Means Test Calculation", which is the official form approved

by the Judicial Conference of the United States to perform the means test. Debtor's Form

B22A indicates current monthly income of $5,607.68 from which he deducted a total of

$5,559.18 in expenses he viewed appropriate under § 707(b)(2)(A)(ii). Debtor included as

an expense the $836 Monthly Loan Payment. As a result, Debtor's Form B22A indicates

monthly disposable income of $48.50. This disposable income, when multiplied by 60 is less

than $6,000, the minimum amount necessary before a presumption of abuse can arise.

However, if the Monthly Loan Payment is excluded from Debtor's deductions,

his disposable income increases to $884.50. Multiplied by sixty, his 60 month disposable

income under § 707(b)(2) will be $53,070, well in excess of the amount necessary for a

---

(...continued)
11 U.S.C. § 707(b). BAPCPA eliminated "substantial" as well as the presumption of granting relief
to the debtor. Pre-BAPCPA the Trustee bore the burden of proving both that the debtor owed
"primarily consumer debts" and that the filing constituted a "substantial abuse." E.g. In re Miller,
335 B.R. 335, (Bankr. E.D. Pa. December 19, 2005).

[12] "Current monthly income" is defined as "the debtor's average monthly income for the six
calendar months prior to the filing of the bankruptcy case." See 11 U.S.C. § 101(10A).

presumption of abuse to arise.  Debtor's ability to deduct the Monthly Loan Payment

determines whether the presumption of abuse applies here.

The expenses a debtor may use to reduce current monthly income are largely set forth

in § 707(b)(2)(A)(ii),[13] which provides in relevant part:

> The debtor's monthly expenses shall be the debtor's monthly expense amounts
> specified under the National Standards and Local Standards, and the debtor's
> actual monthly expenses specified as Other Necessary Expenses issued by the
> Internal Revenue Service for the area in which the debtor resides . . .

Id.  Debtor asserts that the Monthly Loan Payment falls under the "other necessary expense"

category.  The parties agree that the applicable Internal Revenue Service standards are found

in the Internal Revenue Manual (the "Manual").  The relevant provision of the Manual states:

> other expenses may be considered, if they meet the necessary
> expense test - they must provide for the health and welfare of
> the taxpayer and/or his or her family or they must be for the
> production of income.  This is determined based on the facts and
> circumstances of each case.

I.R.M. § 5.15.1.10 ("Other Expenses").  Included in this section is a list of examples of

"other expenses" that would pass the necessary expense test.  One of those is "involuntary

deductions," which qualify only "if it is a requirement of the job; i.e., union dues, uniforms,

work shoes."  Id.  The Monthly Loan Payment is not a condition of Debtor's job, but rather

a condition of his Loans.  There is no evidence that failure to repay the loan will have any

consequence on his employment.  Rather the SPD makes clear that the participant suffers

only an economic penalty for any failure to restore the voluntary contributions.  As such, it

---

[13] Subsections 707(b)(2)(A)(iii) and (iv) address deductions that are not asserted by either
side to be applicable here.

cannot be held to be a "necessary expense." In re Barraza, 346 B.R. 724, 730-31 (Bankr. N.D. Tex. 2006).

Debtor asserts that Form B22A, the presumption of abuse worksheet promulgated as an Official Form by the Judicial Conference to implement the statute, to the contrary, evidences the permissibility of deducting the Monthly Loan Payment.  It describes "other necessary expenses" to include "mandatory payroll deductions" which the parties concede the Monthly Loan Payment to be.  That form at line 26 states:

> **Other Necessary Expenses: mandatory payroll deductions.** Enter the total average monthly payroll deductions that are required for your employment, such as mandatory retirement contributions, union dues and uniform costs. **Do not include discretionary amounts, such as non-mandatory 401(k) contributions.**

Id. (emphasis in original).  Debtor further concludes that, because the Form B22A language cautions that discretionary amounts, such as non-mandatory 401(k) contributions are not included as a necessary expenses, the converse, i.e., payroll deductions for mandatory 401(k) loan repayments, is an allowable expense.  I disagree.[14]  His conclusion ignores the further definition of "mandatory payroll deduction" as one required for the job and conflates two separate concepts, i.e., the voluntary retirement contribution and the mandatory loan repayment.  Contrary to his argument, the form does not speak of mandatory payroll deductions for loan repayments but mandatory payroll deductions required for employment such as retirement contributions.  The term "mandatory retirement contributions" implies a situation where participation in a retirement plan is a condition of the job, i.e., the original

---

[14]  In any event, to the extent that the Form did conflict with the Manual, I would be bound to follow the Manual, which is incorporated by the statute, rather than an Official Form.  Barrazza, 346 B.R. at 730.

contributions are a deduction that an employer would take from <u>all</u> employees.  This is consistent with the Manual, which requires that an involuntary deduction "must be a requirement of the job."  I.R.M.  § 5.15.1.10.

It is clear that Debtor's retirement contributions were discretionary and therefore not a requirement of the job.  The stipulated record shows that participation in the SunCAP Plan is voluntary.  The funds in Debtor's SunCAP account originated, not from mandatory participation that Sunoco imposes on all employees, but rather from Debtor's choice to participate in the Plan.  The fact that Debtor took a loan against those funds under loan terms that mandate repayment by payroll deduction does not change the nature of the funds when Debtor repays them.  How such loan repayments should be considered is suggested by the reasoning of the Third Circuit Court of Appeals in <u>Anes v. Dehart (In re Anes)</u>, 195 F.3d 177, 180 (3d Cir. 1999).  In finding that repayment of loans from a retirement account should not be deducted from disposable income under § 1325, the Court reasoned that the payments, while classified as debt payments, will increase the debtor's retirement benefits and in such situation "[in] effect, the [loan] payments are contributions to the Debtors' retirement accounts."  Thus, although the payroll deductions are mandatory, they nevertheless represent repayment of voluntary retirement contributions.  Line 26 of Form B22A does not compel a different conclusion, nor undermine their express exclusion under the terms of the Manual.

Debtor argues that the Monthly Loan Payment nevertheless meets the necessary expense test, <u>i.e.</u>, it "provides for the health and welfare of the taxpayer."  I.R.M. § 5.15.1.10.  Debtor correctly states that this is generally "determined based on the facts and circumstances of each case," <u>id.</u>, and proceeds to make an argument that absent

replenishment of these contributions, Debtor's fresh start will be jeopardized since he is

54 years old and his only asset of value is his 401k plan. I find this argument misplaced.

The Manual has already expressly found that "contributions to voluntary retirement plans are

not a necessary expense" for the purpose of the Means Test. I.R.M. § 5.15.1.23.[15]  If future

voluntary contributions to the 401k plan are not necessary expenses, it is hard to argue that

the replenishment of past voluntary contributions to the 401k account by repaying loans is

a necessary expense.  Since I have already concluded that the repayments of the 401(k) loan

are defined by the voluntary nature of the 401k plan, a fact-specific inquiry would subvert

the directive of the Manual.

However, even if I were to ignore the more specific provision of the Manual,[16] I would

not be able to follow Debtor's suggested authority, Hebbring v. U.S. Trustee, 463 F.3d 902

---

[15]  Debtor eschews reliance upon this section of the Manual, arguing that "[w]hile section 5.15.1.23 may be important in determining the value of liquidated retirement accounts for tax collection purposes, it is simply not applicable under the Bankruptcy Code where detailed state and federal exemption schemes apply."  Debtor's Mem. at 12-13.  I respectfully disagree. Both § 5.15.1.10 and § 5.15.1.23 are part of the "Financial Analysis Handbook" which appears in Part 5 of the Manual ("Collection Process") and has been expressly adopted by Congress in § 707(b)(2)(A)(ii).  Indeed, to the extent that this is not clear from the statute, the legislative history clarifies:

> the debtor's monthly expenses-exclusive of any payments for debts (unless otherwise permitted)-must be the applicable monthly amounts set forth in the Internal Revenue Service Financial Analysis Handbook.

H.R. Rep. 109-31(I), at 13-14, *as reprinted in* 2005 U.S.C.C.A.N. 88, 100.  Debtor cannot pick and choose among the sections of the Financial Analysis Handbook to suit his purpose.

[16]  "It is a commonplace of statutory construction that the specific govern the general." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384, 112 S.Ct. 2031 (1992).  The rules of statutory construction apply when interpreting agency regulations, see Roberto v. Department of Navy, 440 F.3d 1341, 1349 (Fed. Cir. 2006) and guidelines, see Trafalgar Capital Associates, Inc. v. Cuomo, 159 F.3d 21, 27 (1st Cir. 1998) (applying principles of statutory construction to Housing and Urban Development Handbook).

(9th Cir. 2006), a pre-BAPCPA case that applied a totality of the circumstances test to find

that a debtor's voluntary contributions to a retirement account were a "reasonably necessary

expense" under former § 1325(b)(2).  Debtor's Mem. at 10-11.  Hebbring conflicts with

binding Third Circuit precedent, namely Anes, supra, which established a *per se* rule that

contributions to retirement plans are not reasonably necessary for a debtor's maintenance or

support.  195 F.3d at 181.  Indeed, the Hebbring court expressly disagreed with Anes on this

point, an option that this Court does not have.[17]

Debtor argues that my interpretation of § 707(b)(2)(A)(ii), which merely incorporates

the express provisions of the Manual, leads to an absurd result or otherwise renders

superfluous other sections of the Bankruptcy Code, in violation of the statutory construction

principles espoused above.  See TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 449

(2001).  Debtor identifies § 1322(f), which states: "A plan may not materially alter the terms

of a [401(k) loan] and any amounts required to repay such loan shall not constitute

'disposable income' under section 1325."  11 U.S.C. § 1322(f).  Why, posits Debtor, would

Congress presume under § 707(b)(2)(A) that amounts paid for 401(k) loan repayments

could be used to pay unsecured creditors, yet deny unsecured creditors access to those

funds in a Chapter 13 bankruptcy?  Debtor also directs the Court's attention to 11 U.S.C.

---

[17] I reject Debtor's assertion that the holding in Anes has been abrogated by post-BAPCPA
§ 1322(f).  That section does not make any finding that 401(k) loan payments are reasonably
necessary, but rather simply represents a Congressional choice to exclude them from the definition
of disposable income under § 1325.  To the extent that Debtor asks me to examine pre-BAPCA law
for guidance in determining whether retirement contributions are a necessary expense, I am clearly
bound by Anes.  See In re Harshaw, 345 B.R. 518, 527 (Bankr. W.D. Pa. 2006) (finding Anes
applicable in pre-BAPCPA § 707(b) dismissal context, notwithstanding that it arose in the context
of § 1325) (citations omitted)).

§ 362(b)(19), which precludes the automatic stay from stopping the repayment of 401(k)

loans. Debtor argues that the stay does not stop other payments that are allowed as necessary

expenses by the Manual, such as domestic support obligations[18] and tax assessments.[19]

Debtor therefore asserts that the Trustee's argument renders § 362(b)(19) superfluous

because 401(k) loan payments would be the "only expenses in which the automatic stay

does not apply and which cannot be taken as an allowable expense in the Means Test."

Debtor's Mem. at 14-15 (emphasis added).[20]

However, the presumption of abuse is just that, a presumption. Relying largely upon

National and Local standards that quite often bear no relation to a debtor's real expenses,

the means test simply creates a bright line for the purpose of determining whether the Trustee

or other interested party will benefit from a presumption of abuse. As one pre-eminent

Chapter 13 scholar has noted, "'[t]he mathematical formula incorporated from § 707(b)(2)

---

[18] Compare § 362(b)(2)(C) (excluding from the automatic stay the withholding of domestic support obligations pursuant to a court/administrative order or statute) and I.R.M. § 5.15.1.10 (citing as example of necessary expense "Court-ordered Payments (alimony, child support, including orders made by the state, and other court ordered payments)).

[19] Compare § 362(b)(9)(D) (excludes tax assessments from the automatic stay) and I.R.M. § 5.15.1.10 (listing as an example federal, FICA, Medicare, state and local taxes).

[20] I am not certain that Debtor's assessment that all expenses outside of the automatic stay are allowable expenses under the Means Test is correct. Debtor accurately states that § 362(b)(1) precludes the automatic stay from applying to the commencement or continuation of a criminal action or proceeding, but he asserts without support that criminal fines and assessments are allowable as other necessary expenses under the Manual, citing Form B22A, Line 28 ("court ordered payments. Enter the total monthly amount that you are required to pay pursuant to court order, such as spousal or child support"). Given the exemplars, query whether "other court ordered payments" includes criminal fines and penalties outside of the domestic obligation arena? Similarly, under 362(b)(18) the automatic stay does not apply to perfecting real estate tax assessments. While Debtor appears to assume that those assessments are allowable expenses under § 5.15.1.10 of the Manual, they are not listed in the examples. See also Form B22A, Lines 25 ("Other necessary expenses: taxes. . . . Do not include real estate or sales taxes).

is unrelated to the provisions of the proposed plan and bears no obvious relationship to the amount of money that will actually be available from the debtor for payments to unsecured creditors if the plan is confirmed.'" In re Walker, 2006 WL 1314125, (Bankr. N.D. Ga. May 01, 2006) (*quoting* Keith M. Lundin & Hank Hildebrand, Section-by-Section Analysis of Chapter 13 After BAPCPA SL068 ALI-ABA 65 (July 21, 2005)); accord Paret, 347 B.R. at 17 ("the means test is not an accurate indicator of a debtor's ability to pay"). While I agree with Debtor that Congress has clearly evidenced an intent to protect 401(k) loan repayments, excluding them as a necessary expense under the means test is not inconsistent with that goal.

Debtor's argument also ignores two important realities. First, 401(k) loan repayments are finite; a loan will eventually be paid off. Second, a Chapter 13 case is prospective, i.e., it encompasses a debtor's current and future financial circumstances for a period of three to five years. Section 1322(a) requires that a Chapter 13 plan "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." Id. (emphasis added). Section 1325(b)(1)(B) requires debtors to use all of their "projected disposable income" over a commitment period of three to five years. See e.g. In re McPherson, 350 B.R. 38, 43-44 (Bankr. W.D. Va. 2006). Furthermore, § 521(f) requires a debtor, upon request, to file tax returns and updated statements of income and expenses during the pendency of the case. Excluding 401(k) loans from the means test evidences a "wait and see" approach that would channel debtors with such expenses into the longer period of bankruptcy supervision of Chapter 13 rather than the relatively short tenure of a Chapter 7 case, notwithstanding that

doing so might result in a zero payment plan.  However, because, as here,  401(k) loans might be paid off within the commitment period of a Chapter 13 case, the ability to increase the monthly plan payment would direct newly available funds to creditors.  Such an approach serves both the Congressional intent to protect retirement contributions and "ensure that debtors repay creditors the maximum they can afford," a primary goal of BAPCPA.  H.R. Rep. 109-31, pt. 1 at 1, *as reprinted in* 2005 U.S.C.C.A.N. 88, 89 (2005).

For these reasons, I conclude that repayment of loans from voluntary retirement accounts through mandatory payroll deduction does not meet the  necessary expense test under the IRS Manual, the standard adopted by the means test.  11 U.S.C. § 707(b)(2)(A)(2); I.R.M.  §§  5.15.1.10, §  5.15.1.23.   I further reject Debtor's assertion that such an interpretation leads to an absurd result or renders other provisions of the Code superfluous. Because the Monthly Loan Payment must be excluded from Debtor's deductions under the means test, the Chapter 7 relief he seeks is presumptively abusive.

## II.  A Rebuttable Presumption

Section 707 provides a debtor who cannot otherwise satisfy the means test an opportunity to rebut the presumption of abuse by establishing that "special circumstances" exist:

> (B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
>
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide–

> (I) documentation for such expense or adjustment to income; and
> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
> (III) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

11 U.S.C. § 707(b)(2)(B).[21]  At least one court has examined whether the repayment of a 401(k) loan is justified under the special circumstances provision so as to rebut the presumption of abuse.  See In re Thompson, 350 B.R. 770 (Bankr. N.D. Ohio 2006).  I agree with the approach of that court in not adopting a *per se* rule but noting that the language of § 707(b)(2)(B) implies a fact-specific inquiry.  Id. at 776-77.[22]  For example, a debtor who intentionally takes a loan against his retirement account in contemplation of bankruptcy, without demonstrating emergency financial need, would almost certainly fail to demonstrate repayment of that loan should be allowed as a special circumstance.  Id.

The Thompson court found it significant that the debtor took out his loans more than nineteen months in advance of his bankruptcy and that he used those funds to address his financial difficulties.  In addition, repayment through payroll deduction was mandatory:

---

[21]  There is both a substantive prong and a procedural prong to § 707(b)(2)(B).  The Trustee argues that Debtor has not met the procedural requirements of subsection 2(B)(ii).  I disagree. The evidence is provided by the documents stipulated into the record.  See note 1 supra.  While I agree that Debtor has not supplied an attestation as to the accuracy of the information, that requirement has been obviated by the stipulation.

[22]  I further note that the use of "such as" before the examples given, serious medical condition or a call to active military duty, indicates the non-exhaustive nature of these examples. Moreover, while they are rather grave examples less extreme situations, such as unusually high automobile expenses, have been held to fall within this provision.  E.g. In re Batzkiel, 349 B.R. 581 (Bankr. N.D. Iowa 2006).  As noted by the Thompson court, neither example implies special circumstances of an involuntary nature.  A serious health condition could result from self-inflicted harm and an individual could voluntarily enlist as a reservist.  350 B.R. at 777.

"there was no way for Gregory Thompson to terminate the automatic repayment obligation unless he either (1) quit his job, or (2) repaid the loan in full. The first option would have been financially irresponsible, the second financially impossible." <u>Id.</u> at 777-78. Under those specific circumstances, the court found that the loan repayments constituted special circumstances and appeared to focus on the fact that there was "no reasonable alternative," as required by the statute. <u>Id.</u>

While Debtor did not testify, the stipulated record demonstrates that he incurred the Loans in October of 2002 and November 2004, more than a year before he filed this bankruptcy case in February 2006. Moreover, he used the proceeds to pay his credit card indebtedness and therefore reduce the unsecured debt that would otherwise be paid in a Chapter 13 case. Finally, there is no dispute that deductions from his paycheck for the Monthly Loan Payment are mandatory as long as he is employed with Sunoco. Exhibits 4 and 6. Like the debtor in <u>Thompson</u>, the only way he could stop making such payments would be to quit his job or pay off the Loans in full, the first of which is unreasonable and the latter impossible. I find that these are special circumstances that justify the Monthly Loan Payment "for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(ii). This means only that the Trustee does not receive the benefit of the presumption of abuse and must now prove abuse, as discussed below.

## III. Section 707(b)(3)

If the court decides that a presumption of abuse either does not arise or, as here, has been rebutted in the instant case, § 707(b)(3) provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider –
>
> > (A) whether the debtor filed the petition in bad faith; or
> >
> > (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

The Trustee does not allege that Debtor has filed in bad faith, but rather relies upon subsection (B), i.e., the totality of circumstances of Debtor's financial situation. She argues that the court should be guided by the cases construing the pre-BAPCPA version of § 707(b). In those cases, the statutory vacuum as to the definition of substantial abuse was filled with a "totality of the circumstances" test that looked at, *inter alia*, ability to pay. E.g. In re Stewart, 175 F.3d 796, 809 (10th Cir. 1999); First USA v. Lamanna (In re Lamanna), 153 F.3d 1, 3-4 (1st Cir. 1998); In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989); In re Richmond, 144 B.R. 539, 541 (Bankr. W.D. Okl. 1992).[23] The Trustee asserts that ability to pay is still a valid consideration under post-BAPCPA § 707(b)(3)(B).

Debtor not surprisingly disagrees, asserting that the Court is precluded from examining his ability to pay under the current § 707(b)(3). He argues that the means test is conclusive on this issue: "With the creation of the means test, Congress has effectively withdrawn consideration of the debtor's ability to pay from the more subjective and inherently vague inquiries under section 707(b)(3)." Debtor's Mem. at 26. Notably, at least three courts have rejected similar arguments or taken contrary positions, holding that a

---

[23] Indeed, both the Sixth and Ninth Circuit Courts of Appeal held that a debtor's ability to repay his debts out of future earnings was in itself a basis for dismissal under the higher "substantial abuse" standard. Lamanna, 153 F.3d at 5; Krohn, 886 F.2d at 126.

debtor's actual ability to pay is a relevant, if not primary, consideration under § 707(b)(3).

See In re Richie, ___ B.R. ____, 2006 WL 3019209 (Bankr. E.D. Wis. Oct. 3, 2006); In re

Paret, 347 B.R. 12 (Bankr. D. Del. 2006); In re Pak, 343 B.R. 239 (Bankr. N.D. Cal. 2006).

See also Hon. Eugene Wedoff, Means Testing in the New 707(b), 79 Am. Bankr.L.J. 231

(2005) (the "Wedoff Article").

The language of the statute itself contradicts Debtor's position. See Virgin Islands v.

Knight, 989 F.2d 619, 633 (3d Cir. 1993). By its terms, § 707(b)(3) "explicitly mandates that

the totality of the circumstances of the Debtor's financial situation be considered in

determining whether there is an abuse when the presumption of abuse under paragraph (b)(2)

does not arise or is rebutted." Paret, 347 B.R. at 15. The broad language "totality of

circumstances" and  "financial situation" clearly encompasses a debtor's ability to pay.

Pak, 343 B.R. at 243 (finding "instructive . . . the use of the phrase 'totality of the

circumstances'"); Wedoff Article at 236 ("'passing' the means test does not preclude a

discretionary finding of abuse . . . if a debtor's overall financial circumstances would easily

allow the debtor to repay debts . . . the court may find abuse").

Had Congress wished to eliminate consideration of a debtor's ability to pay, as

Debtor asserts, it would have done so expressly or by explicit reference to  § 707(2)(A).

See 11 U.S.C. § 1325(b)(3) (expressly incorporating § 707(b)(2)(A) and (B) into disposable

income test). "'[W]here Congress includes particular language in one section of a statute

but omits it in another section of the same Act, it is generally presumed that Congress acts

intentionally and purposely in the disparate inclusion or exclusion.'" Russello v. United

States, 464 U.S. 16, 23, 104 S.Ct. 296, 300 (1983) (citation omitted). Congress did not do so

here.  Instead it instructs the Court in broad language to examine the:  "totality of the circumstances of the debtor's financial situation."  Logically, this must include Debtor's ability to pay his debts.

Debtor also relies upon Congressional intent gleaned from statements made by individual members of Congress during floor debates and discussion.  Debtor's Mem at 27. Where, as here, the statutory language is clear, examining the legislative history is unnecessary.  Paret, 347 B.R. at 15.  However, to the extent I would delve into legislative history, I would follow the Supreme Court's guidance that the authoritative source lies in Committee Reports rather than comments of individual  members of Congress.  Garcia v. United States, 469 U.S. 70, 76, 105 S.Ct. 479, 483 (1984) (internal citations omitted). In addition to being an inappropriate guide as to Congressional intent, the individual statements cited by Debtor only discuss the means test generally.  These congresspersons are not discussing § 707(b)(3).

A more appropriate source of legislative history is found in  a Conference Committee Report presented to the Senate on December 7, 2000 by Senator Charles Grassley, the sponsor of BAPCPA.  While the report addresses  a prior version of BAPCPA, that version of § 707(b) appears to be identical to the current provision.  Notably, the Committee Report directly addresses dismissal under § 707(b):

> Dismissal for abuse.-Dismissal under 707(b) is also authorized when there is "abuse".  It is intended that by changing the standard for dismissal from "substantial abuse" to "abuse", stronger controls will be available to the courts, the United States trustee or bankruptcy administrator, private trustees and creditors to limit the abusive use of chapter 7 based on a wide range of circumstances.  The "bad faith" and "totality of the circumstances" of the debtor's situation is adopted as an appropriate standard.  It is intended that all

forms of inappropriate and abusive debtor use of Chapter 7 will be covered by this standard, whether because of the debtor's conduct or the debtor's ability to pay. If a debtor's case would be dismissed today for "substantial abuse" as in In re Lamanna, 153 F. 3d 1 (1st Cir. 1998), it is intended that the case should be subject to dismissal under H.R. 2415. Cases which have decided that a debtor's ability to pay should not be considered when determining abuse, or can be outweighed if the debtor is otherwise acting in good faith, are intended to be overruled. In dealing with ability to pay cases which are abusive, the presumption of abuse and the safe harbor protecting debtors from application of the presumption will not be relevant.

Bankruptcy Reform Act of 2000 - Conference Report, 146 Cong. Rec. S11683-02, S11703 (2000) (emphasis added).[24] See also Paret, 347 B.R. at 16-17. The emphasized language clearly states that the presumption of abuse, i.e., the means test, is not relevant when examining a debtor's ability to pay under a motion to dismiss for abuse. The specific incorporation of In re Lamanna, supra is also significant. In that case, the First Circuit Court of Appeals expressly held that a bankruptcy court may find "substantial abuse" based solely upon the debtor's ability to repay his debt, in light of all of the circumstances. 153 F.3d at 5. In short, based upon both the language of the statute and legislative history, I conclude that Congress intended that bankruptcy courts retain discretion to consider a debtor's actual ability to pay, notwithstanding the outcome of the means test.

_____

[24] The 2005 House Report on BAPCPA does little more than intone the statutory language:

> In a case where the presumption of abuse does not apply or has been rebutted, section 102(a)(2)(C) of the Act amends Bankruptcy Code section 707(b) to require a court to consider whether: (1) the debtor filed the chapter 7 case in bad faith; or (2) the totality of the circumstances of the debtor's financial situation demonstrates abuse . . .

H.R. Rep. 109-31, pt. 1 at 50, *as reprinted in* 2005 U.S.C.C.A.N. 88, 121 (2005). If anything, this suggests that the more recent Congress felt the statutory language was sufficiently clear.

In examining Debtor's ability to pay his debts, the Court must consider his actual and anticipated financial situation over the applicable Chapter 13 commitment period, which the parties agree is five years. See Ritchie, 2006 WL 3019209 at *6; In re Pennington, 348 B.R. 647, 651 (Bankr. D. Del. 2006); Pak, 343 B.R. at 244. Debtor currently has a monthly disposable income of only $44.37. See Schedule J. Moreover, the payroll deductions for his Monthly Loan Payment and voluntary 401(k) contributions are untouchable in the context of a Chapter 13 plan. Sections 541(b)(7) and 1322(f) both plainly state that these deductions "shall not constitute disposable income."

However, the stipulated record also indicates that Debtor's First Loan will be paid off in July, 2007, providing an additional $472 per month for the remaining 42 months of the five year commitment period. The Second Loan will be paid off in August, 2009, providing an additional $364 per month for 17 months. Exhibit 5. If these amounts are dedicated to the repayment of his debts, Debtor is capable of repaying $26,012 over sixty months, or fifty seven percent of his unsecured debt. I also note that Debtor has been employed with Sunoco for eighteen years, evidencing job stability.

Under pre-BAPCPA § 707(b), once the Trustee demonstrated a debtor's ability to make substantial payment on unsecured debt, the burden shifted to the debtor to show his or her entitlement to Chapter 7 relief. In re Wiedner, 344 B.R. 321, 326 (Bankr. M.D. Pa. 2005); In re Cohen, 246 B.R. 658, 665 (Bankr. D. Colo. 2000); In re Haffner, 198 B.R. 646, 649 (Bank. D. R.I. 1996); In re Snow, 185 B.R. 397, 402-03 (Bankr. D. Mass.1995). The parties have not addressed whether BAPCPA has changed this burden-shifting, but I see

nothing in the statute or its legislative history to lead me to evidence a change.[25]  To the contrary, such a shifting burden is even more consistent with the current § 707(b)(3), which has become much more movant-friendly by reducing the evidentiary burden (from "substantial abuse" to "abuse") and eliminating the presumption that a debtor is entitled to Chapter 7 relief.  The Trustee has demonstrated that Debtor will, within seven months, have the ability to begin making substantial payments toward his unsecured debt. The burden therefore shifts to Debtor to demonstrate he should otherwise be entitled to Chapter 7 relief.

Debtor points to only one extenuating circumstance that indicates the Trustee may have overstated Debtor's future disposable income.  The parties have stipulated that, at some point in the next five years, he will need a replacement vehicle.  Stipulated Facts ¶ 4, Exhibit 7.  The Trustee does not dispute that this would be a reasonable and necessary expense.  However, no evidence was presented on when within that five-year period Debtor will need the vehicle or how much he can be expected to reasonably pay in terms of a down payment and monthly payments on the loan, insurance, maintenance, etc.  As Debtor simply did not present evidence on this anticipated expense, I have no ability to determine what effect the required vehicle expense will have on the $26,000 otherwise available to unsecured creditors.  However, even assuming that Debtor had to divert half of the $26,000 to purchase

---

[25]  While not making this argument, Debtor appears to assume a change in the burden of proof.  He asserts that the Trustee has failed to take into account other expenses Debtor may have in the future (e.g., car, medical) and increases in the cost of living.  Debtor's Mem. at 34.  For the reason stated below, I find that the Trustee does not have to eliminate the possibility of all future expenses.

and support a new automobile, I would find the availability of a $13,000 distribution for unsecured creditors significant enough to preclude Chapter 7 relief as abusive.

I find that this conclusion is not altered by the Debtor's contention that he should be credited with additional $200 deduction under the Chapter 13 means test for operation expenses related to an older automobile, despite the fact that he did not claim one on the Form B22A. Debtor's Mem. at 33-34. Assuming without deciding that such a deduction would be allowed,[26] I have already considered that a car expense of $13,000 over the length of a five year plan will be permitted, albeit not knowing when or for how much the purchase would be. Whether the expense is incurred in connection with the anticipated new car or the existing older car where the deduction would be lower, it is one deduction. Since the Debtor failed to testify and the record was therefore not specific as to his intentions regarding his car replacement, I can only speculate on the effect of this deduction on his projected disposable income. However, on this record, it would be abusive not to require Debtor, if he seeks bankruptcy relief, to proceed in Chapter 13 where he will be given the appropriate credit for his automobile expense under a Chapter 13 plan once he actually determines his future transportation costs.

Absent additional future expenses, none of which were placed into this record, it appears that Debtor will have future disposable income sufficient to pay a significant amount of his unsecured debt. As such, the Court finds that granting him relief under

---

[26] With respect to above median income debtors, the courts are divided as to the appropriate measure of "projected disposable income" under § 1325(b)(3): application of the National and Local Standards of the means test versus a determination based on Schedules I and J based on actual expenses . Compare, e.g. In re Oliver, 2006 WL 2086691 (Bankr. D. Or. June 29, 2006) with In re Edmunds, 350 B.R. 636 (Bankr. D. S.C. 2006).

Chapter 7 would be an abuse of the provisions of that chapter.  In Chapter 13 he will still be able to make the Monthly Loan Payment while formulating a Plan that addresses his future income and expenses in a manner consistent with the Bankruptcy Code.[27]

## CONCLUSION

For the reasons stated above, this case shall be dismissed unless the Debtor converts his case to a case under Chapter 13 within ten days.  An Order consistent with the foregoing Opinion shall be entered.

_____
    DIANE WEISS SIGMUND
    Chief U.S. Bankruptcy Judge

Dated:   December 15, 2006

---

[27]   The Trustee cited other factors examined by courts pre-BAPCPA for determining "substantial abuse", including:  (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and (5) whether the petition was filed in good faith.  Trustee's Mem. at 15-16 (quoting In re Green, 934 F.2d 568, 572 (4th Cir 1991)).  Because I find that Debtor's ability to pay is sufficient to establish abuse, I need not address other factors.  In any case, the Trustee does not allege that Debtor's schedules are inaccurate, his budget is unreasonable or he acted in bad faith.  Given the sparse evidentiary record, I have no basis to address the other factors.

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| KENNETH LENTON, | : | Bankruptcy No. 06-10520DWS |
|     Debtor. | : | |

# ORDER

**AND NOW**, this 15th  day of December 2006, upon consideration of Motion of the United States Trustee (the "Trustee") to Dismiss the above-captioned bankruptcy case pursuant to 11 U.S.C. § 707(b) (the "Motion"), after notice and hearing and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Motion is **GRANTED IN PART.** The above-captioned case shall be dismissed within ten (10) days following entry of this Order unless Debtor converts this case to one under Chapter 13.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge